GRAHAM *et al. v.* PLANO MANUF'G CO. *et al.*

*(Circuit Court, N. D. Illinois.* February 20, 1888.)

1. PATENTS FOR INVENTIONS—ANTICIPATION—HARVESTER.

An "improvement in harvesters," consisting of a "floating finger-bar," covered by letters patent No. 74,342, issued February 11, 1868, to Alvaro B. Graham, was not anticipated by the prior devices of Dolph, Zug, Ball, Bartlett, and Bramer, or by the Bradley machine, made in 1863, or the Preston machine, made in 1861, so as to make the patent void for want of novelty, or because the device was in use for more than two years prior to application therefor.

2. SAME—INFRINGEMENT—HARVESTER.

Letters patent No. 74,342, for an "improvement in harvesters," said improvement consisting of a "floating finger-bar," wherein the tilting and rocking motions of the finger-beam are secured by means of the swivel joint which attaches the vibratable link to the body of the machine, and the swivel joint located in the draft-rod at the joint where the draft-rod is attached to the shoe, are infringed by the defendants' device, which consists of substituting a ball and socket joint for the swivel joint.

In Equity. On bill for injunction.

*Banning & Banning,* for complainants.

*Coburn & Thatcher,* for defendants.

BLODGETT, J. The bill in this case charges the defendants with the infringement of letters patent No. 74,342, granted February 11, 1868, to Alvaro B. Graham for an "improvement in harvesters." Infringement is charged of the first and second claims of the patent, which describe and cover the device by which the finger-bar is made to rise and fall at either end, and rock forward or backward, independently of the gearing carriage, while maintaining its connection with it. The first claim is for the device shown, whereby the finger-beam is enabled to rise and fall at either end, and rock forward or backward independently of the gearing-carriage; and the second claim covers this device, together with a lever by which the finger-beam may be rocked by the driver or operator of the machine, for the purpose of setting its guard-fingers at any desirable inclination to the horizontal line. The defenses interposed are: (1) Want of patentable novelty. (2) Public use of the device for more than two years before the patent in question was applied for. (3) That defendants do not infringe.

This patent has been twice before this court—*First* in the case of *Graham* v. *Gammon,* in July, 1877, where the controversy was as to the validity of the claims now in question, (reported 7 Biss. 490;) and, *second,* in *Graham* v. *McCormick,* 10 Biss. 39, 11 Fed. Rep. 859, where the same claims were in controversy; and in the Eastern district of Wisconsin, in the case of *Graham* v. *Manufacturing Co.,* 11 Fed. Rep. 138, decided by his honor Judge DYER, in October, 1880, involving a controversy over the same claims. The defense in this case has made an exhaustive presentation in their proofs of the prior art covered by these two claims, and also several cases of alleged prior use of the devices for more than two years

before the patent was applied for.    It seems to me, in view of the thorough and careful examination which this patent has heretofore received from this and other courts, that the only questions left open for consideration in this case are, that of infringement, and whether the defendants have shown by the proof any substantially different state of facts upon the question of novelty than was shown in the earlier litigation. It is true that a larger number of exhibits of former patents, illustrating the condition of the prior art, are introduced in this case than were introduced or considered in the former cases; but I see nothing in the additional exhibits, patents, models, and drawings offered in this case which is, or can be treated as, anything but mere cumulative evidence; and nothing which seems to me to any more nearly anticipate the devices here in question than were shown in the Dolph, Zug, Ball, Bartlett, and Bramer devices, considered in the former cases.    The Bramer patent having been considered by Judge DYER in the *Manufacturing Co. Case,* and it appearing in this case that while the Bramer patent is not alluded to in the opinion in *Graham* v. *McCormick,* yet it was brought to the attention of the court, on a motion for rehearing, and strenuously pressed as an anticipation of the complainant's device, and yet, notwithstanding this exhibition of the Bramer patent, the motion for rehearing was denied, a fact of much cogency to my mind, in view of my knowledge of the exceedingly thorough and cautious methods of the late circuit judge of this circuit, before whom *Graham* v. *McCormick* was heard.    In regard to all the testimony in this case illustrating the state of the art in the field to which the complainant's invention belongs, both that which has been passed upon in the former cases and that which is brought forward for the first time in this case, it may be said that a review of this proof, in the light of what Graham did, shows that several inventors, who preceded him in point of time, groped about, or approximated to his device, and it is now comparatively easy, with the Graham machine before us, to make a Graham machine out of several of these older efforts in that direction; but the fact seems to me to remain unshaken, by the proof in this case, as it did in the former cases, that none of them accomplished the result obtained by his invention, or made a machine organized and intended to secure that result by the means which he adopted and described.    In other words, Graham seems to me to have been the first to embody, in a practical working machine, the device covered by his patent.    A mere mechanic, with a Graham machine before him, may, without invention, now so alter and improve some of the clumsy attempts at the same object in the older art as to make these machines do what Graham's machine does; but they need the instruction of the Graham device to make these old machines a success.    Graham achieved success, while his predecessors in the field had failed.

In the former litigation no attempt was made to defeat the patent by showing prior use for the term of two years before the patent was applied for, except use by the patentee himself, and this use was held to be only experimental; and it becomes necessary, for a moment, to consider the cases of prior use which are shown in this record.    There are

three instances of such alleged prior use presented and relied upon by the defendants: *First.* What is known as the Bradley machine, which is claimed to have been manufactured and sold by the firm of C. C. Bradley & Son, or the Bradley Manufacturing Company, at Syracuse, N. Y., in 1863 and 1864. In regard to this machine it is sufficient to say that the proof is not satisfactory, to my mind, that it was made and in use prior to the invention of Graham. *Second.* That it does not, as illustrated by the model produced in evidence, show the free rocking movement which is provided for and obtained in the complainant's patent. And, *thirdly,* that whatever was contained in this Bradley machine was but an experiment, which was abandoned after a trial of a couple of seasons, and the experiments were never carried so far as to produce an acceptable and practical device, like that covered by the complainant's patent. The proof in this case shows that C. C. Bradley & Sons were manufacturers of harvesting machines at Syracuse, N. Y., under a license from Mr. M. G. Hubbard, the inventor and patentee of the main features of their machines; that in 1862 Hubbard invented the tilting and rocking device which the Bradleys claimed was embodied in the machine now urged as an anticipation of this patent, and yet the proof shows that neither Hubbard nor Bradley ever patented this device; and that, after using it for two seasons, it was abandoned, and none thereafter made. With the knowledge that this court has acquired, by long experience, of the characteristics of inventors and manufacturers, I can hardly deem it probable that if Hubbard had made the improvement shown in the Bradley model he would not have secured it by letters patent; as Bradley was at that time paying him a royalty on all machines manufactured, and this feature was certainly a new and useful improvement worthy of a patent at that time. The advantages of a floating finger-bar, readily adjusting itself to the inequalities of the surface of the ground upon which the machine was to operate, were so obvious, and so manifestly a step in advance of the art as it existed at that time, that it seems to me that an alert inventor like Hubbard, or an intelligent manufacturer like Bradley, who had devised, or thought he had devised, a practical device for such a finger-bar, would have made haste to cover it by a patent; and this improbability certainly goes far in my mind to raise doubt as to whether this machine, even if its use was fully established, could be held to be an anticipation of the complainant's device. A working machine constructed after this model might be said to contain a germ or suggestion of the Graham device, but so imperfect as to be no practical improvement; and I think I am fully supported by the proof in the conclusion that the Bradley machine should be considered as an abandoned experiment.

The next machine presented as an anticipation is what is described as the "Preston machine," and the use of it is established by the testimony of Mr. King H. C. Preston, who testifies that he made a machine in the summer of 1861, at Manlius, New York, embodying substantially the features covered by the patent now under consideration, and sold it to a Mr. J. L. Pope, a farmer living at that time near Manlius. The ma-

chine itself is not produced, and we have only the unaided recollection of Mr. Preston and Mr. Pope as to how the machine embodied the features of the first two claims of the complainant's patent. Mr. Preston has put into the case, with his deposition, an illustrative model of the machine which he made and sold to Pope, which shows a machine very similar, as far as the features in question are concerned, to the Bradley machine, as shown by the Bradley illustrative model. In fact, one might conclude that the Bradley machine was but an embodiment of the idea shown in this model. I attach but very little importance to the testimony of Mr. Pope, as he was a farmer, not specially conversant with the construction of harvesters any further than any farmer who has used them, and cannot be supposed to remember, after the lapse of over 25 years, what particular mechanical devices were used to secure a rocking and tilting finger-bar in his machine, if the machine contained any such characteristics. Mr. Preston does not, I must say, stand in the best light before the court as a witness, as the proof certainly tends to show that he attempted, at least, to dispose of his testimony to the highest bidder in this case; but even if it is all true, it only shows the production of a machine like the Bradley, in which it may possibly be said the embryo of the Graham invention may be found; that is, it is an attempt to secure a floating finger-bar, but by different devices from those adopted by complainants, or by any of the later machines. From Preston's own testimony given on cross-examination, I conclude that this single machine, which he says he made and sold to Pope, did not contain the devices in question, and the most satisfactory circumstance in support of that conclusion is the fact that Preston afterwards took a patent for an improvement in harvesting machines, in which the device in question was entirely omitted; and I cannot believe that he would have failed to claim a patent for such device if he had invented and put it into use. I conclude, therefore, that this one machine, made by him and sold to Pope, if it contained any attempt at an adjustable finger-bar, was so far a failure in that respect that he did not consider it worth his while to either follow the improvement further, or cover it by a patent.

The last case of prior use cited by the defendant is by Frank Bramer. It is claimed, on the part of the defendants, that Bramer, in the fall of 1862, conceived the idea of a machine embodying the adjustable finger-bar, in substantially the same form in which it is now shown in the defendants' machine, defendants' machine being manufactured under what is known in the art as the "Bramer patent," issued in 1865, to this same Frank Bramer. Bramer himself is dead, and his testimony is not obtainable in the case; but the proof in regard to his having made this machine at the early day now claimed is so contradictory that I cannot say that it is established, so as to come even within the rule contended for by the defendant, that Bramer, having obtained a patent at an earlier day than Graham, the burden of proof is shifted from the defendant to Graham to show that he (Graham) really was older in point of invention than Bramer. Taking the testimony as it now stands, I do not think it is established by the defendants that Bramer perfected his invention, so

far as the floating finger-bar is concerned, until some time after Graham's device was perfected, and he had made an operative machine. The conduct of Bramer himself in dealing with the owners of this patent, after its validity had been sustained by the courts, is such as to throw great doubt upon this picked-up testimony from persons who claim now to have had knowledge of the facts in reference to the time when Bramer made his completed machine. Bramer himself must certainly be presumed to know better than these witnesses now produced when he made a machine with a floating finger-bar, such as is shown in his patent; and if he had, in fact, made such a machine as early as now stated by these witnesses, it seems incredible to me that he would have settled, or consented to a settlement, with the owners of the Graham patent, and paid them a large sum for damages and royalties. It must, I think, be conceded that the testimony in regard to prior use has been industriously collected; and, if it could all be accepted as true, no doubt there is enough in this record to defeat this patent in the light of the late decision of the supreme court in *Andrews* v. *Hovey*, 8 Sup. Ct. Rep. 101.

As to the issue of infringement. Graham secures the tilting and rocking motions of the finger-beam by means of the swivel joint, M, which attaches the vibratable link to the body of the machine, and the swivel joint, M', located in the draft-rod, at the point where the draft-rod is attached to the shoe. Defendants insist that their machine does not contain these two swivel joints. Defendants use in place of the swivel joint, M, a ball and socket joint, which is in all respects the equivalent of, and substitute for, Graham's swivel joint. In fact, this ball and socket joint, as shown in defendants' machine, is nothing but a swivel joint, as it is limited to the rotary motion, instead of being a universal joint, which is the characteristic of the ball and socket joint proper, so that defendants' ball and socket joint is, in effect, nothing but the Graham swivel joint, located at the same place, and performing the same function as Graham's swivel joint, M. The defendants' machine is what is known as a front-cut machine—that is, the sickle-bar operates in front of the carrying-wheel instead of behind it, and the movement of the sickel-bar and vibratable link of the machine is accomplished by means of a push-bar or thrust-rod instead of Graham's drag-bar; but Graham provided in his specifications that the cutter-bar might be located in front of the wheels, and, in that event, his draft-rod would become a push-bar. This change in the location of parts involves some change, of course, in the adaptation of the elements of the device to produce the same result in a front-cut machine as in a rear-cut machine; but I find no difficulty in locating the Graham swivel joint, M', in the defendants' machine. Instead of locating this joint in the draft-bar, where it connected with the shoe, as Graham does, the defendant has placed the swivel joint in the shoe at the place where the shoe is attached to the vibratable link. This joint in the shoe, whereby the cutter-bar is attached to the vibratable link, in my opinion, corresponds in function, location, and every other characteristic with Graham's swivel joint, M'. The defendants' push-rod is attached by a hinge-joint to the vibratable link so that the link can rock,

FEDERAL REPORTER.

and thereby rock the cutter-bar, thus allowing the defendants' vibratable link the same motion allowed to the Graham link by his swivel joint, M, and, in my opinion, even if the proofs required that Graham should, in the construction of his patent, be limited to his special devices, I think the defendant has adopted those special devices.

I am therefore of opinion that no sufficient defense is made out in this case, and that the complainants are entitled to a decree for an accounting.